```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: May 14, 2009
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
RONALD BORSACK, individually and as          :
Administrator of the Estate of Lesley Borsack,
                                             :
         Plaintiff,                             04 Civ. 3255 (PAC)
                                             :
    -against-
                                             :   MEMORANDUM ORDER
FORD MOTOR COMPANY,
                                             :
         Defendant.
------------------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff Ronald Borsack, individually and on behalf of the estate of his deceased wife, Lesley Borsack, sued Ford Motor Company ("Ford") claiming that a defectively designed door latch and seat-belt system in Plaintiff's 1998 Ford Expedition were the proximate cause of Mrs. Borsack's ejection and subsequent death in a one-car rollover accident.  On March 5, 2009, following a nine-day trial, a jury found in favor of Ford.

Plaintiff now moves for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure on the following grounds: (1) the jury's verdict for Ford was based on an incorrect interpretation of the evidence; (2) the Court erred in allowing Ford to present statistical evidence about the rate of accidents across comparison vehicles; (3) during summation Ford's counsel misstated the speed that Mrs. Borsack's vehicle was traveling when it began to roll; and (4) the Court erred by preventing Mr. Borsack from presenting his claim of a seat-belt defect to the jury.

None of these grounds are sufficient and Plaintiff's motion for a new trial is DENIED.

## BACKGROUND

The facts of the incident leading to the litigation are not contested.  Mrs. Borsack died when she swerved to avoid a raccoon while driving on a four-lane divided highway in Sparta

1

Township, New Jersey, on the evening on May 8, 2002. Her Ford Expedition drove into the grass median dividing the highway and rolled over four times. At some point between the completion of roll one and roll two Mrs. Borsack was ejected from the vehicle—either through the driver's-side window, as Ford claimed, or through the driver's-side door, as Plaintiff claimed—and she died at the scene shortly after the accident. Both parties agreed that the driver's-side door opened at some point in the rollover.

At issue was what caused the door to open. Mr. Borsack presented evidence at trial that the force of the crash activated an internal latch through the foreshortening of a stiff rod inside the door, or that a wire loom inside the door panel interfered with the proper function of the internal latch and caused the door to open. Had the door not opened, Plaintiff argued, Mrs. Borsack would have stayed inside the vehicle; her injuries would be less and she would not have died. Plaintiff argued that either explanation for why the door opened represented a design defect and was the proximate cause of Mrs. Borsack's death. Ford presented evidence at trial that the door latch was properly designed and that the door opened because it was activated by Mrs. Borsack or some other object in the car—essentially, that someone or something inadvertently pulled the inside door handle during the rollover. Ford's theory was that Mrs. Borsack was not wearing her seat belt and that her foot or some other part of her body caught onto the inside door latch, opening the door as she was ejected out of the window.

Mr. Borsack also wished to demonstrate that there was a seat-belt defect in the Ford Expedition which malfunctioned during the rollover. Had the seat belt functioned properly Mrs. Borsack would have stayed inside the vehicle and would not have been ejected. The Court conducted a pre-trial <u>Daubert</u> hearing on whether Plaintiff's proposed seat-belt expert, Mark Pozzi, should be allowed to testify on his conclusion that the seat belt was defective. On

2

February 3, 2009, the Court determined, pursuant to Rule 702 of the Federal Rules of Evidence, that Mr. Pozzi could not testify about the safety of the 1998 Ford Expedition seat belt because he relied on tests of dissimilar seat-belt systems in developing his theories.[1]

At trial, Mr. Borsack focused his product liability claim on the internal door-latch system. He presented 13 witnesses, including several experts. Ford called seven witnesses, including Dr. Rose Ray, who presented statistical evidence comparing ejection rates in rollover crashes between the Expedition and similar vehicles across six states. After nine days of testimony and summations from the parties, the jury deliberated for approximately four-and-a-half hours and returned a verdict in favor of the Defendant. Interrogatory 1 on the verdict sheet asked, "Do you find that the door latch system of the 1998 Ford Expedition was defectively designed?" and the jury answered in the negative. The verdict sheet then had the following instruction: "If you answered 'NO' to question 1, stop, you have returned your verdict." At Plaintiff's request, each member of the jury was polled and confirmed the verdict. The Court entered an Order of judgment dismissing the Complaint on March 23, 2009.

## DISCUSSION

Rule 59 provides that courts may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). Granting a new trial is appropriate where "the jury has reached a seriously erroneous result or its verdict is a miscarriage of justice." Nimely v. City of New York, 414 F.3d 381, 392 (2d Cir. 2005) (internal quotation marks and citations omitted). The Court addresses each of Plaintiff's four

---

[1] The Court actually examined Mr. Pozzi's admissibility three times. The first was on July 26, 2007, when the Court ruled on Ford's motion for summary judgment and held that Plaintiff's expert Andrew Gilberg could testify about his conclusions on the failure of the internal door latch, but that the Court needed further factual development on whether Mr. Pozzi conducted tests on seat-belt systems that were substantially similar to the Expedition model. (See July 26, 2007 Opinion & Order 12-15.) The second was the Court's February 3, 2009 ruling following the Daubert hearing. The third was on February 13, 2009, when the Court considered and denied Mr. Borsack's motion for reconsideration of the February 3, 2009 Order.

grounds for a new trial.

**1. The Jury's Verdict**

Mr. Borsack argues that the jury's verdict is unsupported by the evidence presented at trial. He attempts to impeach the verdict by claiming that "[c]onversations with jurors subsequent to the verdict confirmed Plaintiff's suspicion that the jury found that latch overload caused the door opening in this case." (See Plaintiff's Rule 59 Motion ("Pl. Rule 59 Mot.") at 5.) As such, the jury's ruling could not be based upon any evidence in the record, because the evidence at trial indicated that latch overload was not the cause of the door opening. This surmise about the jury's reasoning is further premised on the jury's request, during its deliberations, to see an exemplar overloaded latch.[2]

These arguments do not lead to the conclusion that the jury's verdict was erroneous or a miscarriage of justice. First, informal, off-the-record, post-verdict conversations with jurors cannot be the basis for overturning a verdict under Rule 59. See Attridge v. Cencorp Div. of Dover Tech. Int'l, Inc., 836 F.2d 113, 116 (2d Cir. 1987) ("If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation; to the destruction of all frankness and freedom of discussion and conference.") (quoting McDonald v. Pless, 238 U.S. 264, 267-68 (1915)). While post-verdict discussions between the lawyers and the jurors may be helpful to lawyers concerned about improving their trial techniques, they are not fact-finding missions for the losing party to uncover an off-hand statement that presents grounds for overturning the verdict. The Court gives no weight to Mr. Borsack's argument, insofar as it is based on conversations with jurors

---

[2] The latch was a demonstrative exhibit not entered into evidence, and the Court did not permit the jury to examine the latch. (See Trial Transcript ("Tr.") 1436:01-1440:10. The jury was permitted to examine the damaged door and latch from Mrs. Borsack's vehicle, and when told that the Court would only allow the jury to examine the latch that was on the door and received into evidence, the jury foreperson responded "[t]hat's fine." (Id. 1440:01-10.)

4

subsequent to the verdict.

As for the jury's request to see the overloaded latch, the jury's verdict is not undermined even if the Court credited Mr. Borsack's surmise that the jury suspected the door opened because of latch overload from the impact with the median. By returning a verdict for Ford, the jury explicitly found that Plaintiff had failed to prove that the latch system was designed in a defective manner. Question 1 on the verdict sheet asked, "Do you find that the door latch system of the 1998 Ford Expedition was defectively designed?" The jury answered "No." The jury was not asked how the door opened; the verdict sheet asked whether Plaintiff met his burden to prove that the door latch system was defectively designed.

**2. Admission of Statistical Evidence**

Plaintiff argues that the Court erred in admitting Dr. Ray's statistical evidence because it was based on unreliable data and because of her "ignorance of vehicle design." (See Pl. Rule 59 Mot. at 9.) These arguments repeat Plaintiff's pre-trial motion in limine. (See Plaintiff's July 25, 2008 Motion in Limine.) The Court denied this motion on the record on September 15, 2008, and will not repeat its conclusions here.[3]

Plaintiff also argues that the more serious error was in allowing Dr. Ray to voice her opinion about whether, based on her statistical analysis of rollover crashes among peer vehicles in six states, a defect existed in the Expedition's door latch system. Over objection, Dr. Ray testified as follows:

> Q: As a matter of statistics, having analyzed the data, have you reached an opinion to a reasonable degree of statistical probability regarding whether there was a defect

---

[3] The Court's prior ruling also covers Plaintiff's argument, repeated in this motion, that Dr. Ray failed to establish substantial similarity between the vehicles she analyzed. Plaintiff's counsel effectively cross-examined Dr. Ray on the reliability of her data and about the similarity between the Ford Expedition and the other vehicles in her study. (Tr. 813:16-814:15; 830:12-841:10.) Plaintiff pointed out potential flaws in Dr. Ray's reasoning that the jury could have—and may have—credited in its analysis. Plaintiff's argument on Dr. Ray's admissibility seems to confuse admissibility with credibility.

5

>present in the Expedition in the door latch system?
>
>A: Yes, I have.  If there were a safety defect in the door latch system, I would expect to see an elevated risk of ejection or an elevated risk of injury, and I did not see that.  So the statistical analysis does not support the hypothesis that there is a defect.

See Trial Transcript ("Tr.") 811:20-812:03.

Plaintiff states that Dr. Ray's opinion is irrelevant because even though she determined that the statistical odds of the Expedition having a defect in the door latch were low, it does not necessarily follow that the event did not happen.  Accordingly, Plaintiff argues that Dr. Ray's conclusion should have been withheld from the jury.  This misses the point.  Once qualified under Daubert, an expert is allowed to offer a conclusion based on his or her statistical research.  See, e.g., Donnelly v. Ford Motor Co., 80 F. Supp. 2d 45, 49-50 (E.D.N.Y. 1999) (discussing that when an expert makes a conclusion as to an ultimate issue, the court would expect the conclusion to be backed by "some sort of statistical data and analysis").  Dr. Ray's conclusion was that the statistical evidence did not support a theory of a product defect in the Expedition.  This is probative of whether a defect existed, even though it did not address the particular condition of Mrs. Borsack's vehicle.  There was no error in admitting Dr. Ray's testimony.

**3.  Defense Statements at Summation**

Plaintiff argues that he merits a new trial based on Defendant's incorrect statement at summation that the accident was a "severe crash" and that Mrs. Borsack was traveling "65 miles per hour on the highway" at the time of the rollover. (See Tr. 1365:24-1366:03.)  Plaintiff states that while there was evidence at trial that the vehicle speed at rollover was up to 55 miles per hour, adding an extra 10 miles per hour in summation was "highly prejudicial" because it misrepresented the severity of the force acting upon the door-latch system during the crash and rollover.

There was testimony in the record by Plaintiff's expert that Mrs. Borsack's vehicle was travelling between 53 and 65 miles per hour before her vehicle left the road. The Defendant's statement at summation was that "[t]his was a severe rollover accident, 65 miles per hour on the highway." This is a fair argument since Defendant could have been referring to the speed of Mrs. Borsack's vehicle immediately before the rollover when she swerved to avoid the raccoon, which was the point at which both parties presented accident reconstruction evidence at trial. Second, even if the jury understood the Defendant's statement to mean that the rollover speed was 65 miles per hour, such a minor misstatement is not a basis for a new trial. The difference between 55 miles per hour and 65 miles per hour would not be enough to alter a jury's impression of the severity of the crash and the inertial forces acting on the door latch. See Patterson v. Balsamico, 440 F.3d 104, 119 (2d Cir. 2006) ("Not every improper or poorly supported remark made in summation irreparably taints the proceedings . . . rarely will an attorney's conduct so infect a trial with undue prejudice or passion as to require reversal.") (internal quotations and citations omitted). Third, Mr. Borsack did not object to Defendant's argument when it was given, nor did Plaintiff ask for a curative jury instruction. Marcic v. Reinauer Transp. Cos., 397 F.3d 120, 124 (2d Cir. 2005) ("In the case of unpreserved error, a new trial will be granted only for error that was so serious and flagrant that it goes to the very integrity of the trial.") (internal quotation and citation omitted). Ford's statement was not so serious as to undermine the integrity of the trial. Finally, the jury was cautioned that the lawyers' arguments were not evidence and that the jury was the sole finder of the facts. See Am. Nat'l Fire Ins. Co. v. Mirasco, Inc., 451 F. Supp. 2d 576, 583 (S.D.N.Y. 2006) (finding harmless error and denying motion for new trial where jury instruction cured party's misstatement during summation). Defendant's statement—or misstatement—during summation does not warrant a

new trial.

### 4. Denial of Plaintiff's Seat-Belt Defect Argument

Finally, Plaintiff repeats his argument that his expert Mark Pozzi should have been able to present evidence of a defect in the Expedition's seat-belt system.[4] The parties thoroughly briefed and litigated this issue before trial, and the Court issued a written decision explaining why, pursuant to Rule 702 of the Federal Rules of Evidence and <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993), Mr. Pozzi could not testify regarding his analysis of seat-belt defects. (<u>See</u> Feb. 3, 2009 Order.) There is no need for the Court to repeat its opinions. <u>See</u> <u>Sequa Corp. v. GBJ Corp.</u>, 156 F.3d 136, 144 (2d Cir. 1998) ("Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'").

Plaintiff also repeats the argument he made in support of his motion to reconsider the February 3, 2009 Order excluding Mr. Pozzi's seat-belt testimony. Briefly stated, having been foreclosed from testifying about a specific defect in the Ford Expedition seat belt, Plaintiff shifted gears and offered Mr. Pozzi's testimony based on circumstantial evidence of a product defect. In other words, because the rollover occurred and Mrs. Borsack was ejected from the vehicle, the seat belt must have been defective. The Court ruled on February 13, 2009, that Plaintiff could not offer a new theory—indeterminate design defect—which would allow Plaintiff to claim a seat-belt malfunction without explaining or identifying how and why. (<u>See</u> Feb. 13, 2009 Memo Endorsement.) Again, there is no reason for the Court to repeat its opinion, as Rule 59 motions are not an opportunity to relitigate old issues. <u>See</u> <u>GBJ Corp.</u>, 156 F.3d at 144.

---

[4]   Mr. Pozzi was permitted to testify at trial about his research and conclusions on whether Mrs. Borsack was wearing her seat belt at the time of the accident.

8

## CONCLUSION

For the foregoing reasons, Plaintiff's Rule 59 motion for a new trial is DENIED. The Clerk of the Court is directed to terminate the pending motion.

Dated: New York, New York
       May 14, 2009

SO ORDERED

*[signature]*
PAUL A. CROTTY
United States District Judge